UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GLORIA ONTIVEROS, | No. CV 10-4215-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 15, 2010, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 25, 2010, and July 8, 2010. Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 3, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on July 10, 1963. [Administrative Record ("AR") at 32, 55.] She has a tenth grade education [AR at 32, 108], and has past relevant work experience as a dental assistant and receptionist. [AR at 16, 33, 104, 110.]

On February 23, 2006, plaintiff filed her application for Supplemental Security Income payments, alleging that she has been disabled since January 1, 2001,[1] due to, among other things, depression, schizophrenia, hepatitis C, asthma, and muscle spasms. [AR at 9, 29, 55, 93-97, 102-09.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 57-68.] A hearing was held on October 14, 2008, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified.[2] [AR at 26-54.] On November 3, 2008, the ALJ determined that plaintiff was not disabled. [AR at 6-18.] When the Appeals Council denied plaintiff's request for review of the hearing decision on April 23, 2010, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Plaintiff initially alleged a disability onset date of January 1, 2001, but amended the onset date to December 20, 2004, during the October 14, 2008, administrative hearing. [See AR at 9, 29, 97.]

[2] During the October 14, 2008, administrative hearing, plaintiff requested that her prior application for Supplemental Security Income payments, filed on July 20, 2004, be reopened. [See AR at 9, 29-30.] In the November 3, 2008, hearing decision, the ALJ declined to do so. [See AR at 9.] As plaintiff does not challenge the ALJ's decision not to reopen her July 20, 2004, application, the Court does not address herein that aspect of the ALJ's decision.

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since December 20, 2004, the amended onset date of disability. [AR at 11.] At step two, the ALJ concluded that plaintiff has the following impairments that, in combination, are severe: asthma; hepatitis C; borderline intellectual functioning; depressive disorder, not otherwise specified; and a history of polysubstance dependence with marijuana, alcohol, and methamphetamine, in remission. [AR at 11-12.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 12.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] "to perform a full range of work at all exertional levels," but that she is limited to working in environments without dust, gases, fumes or odors, and has the following nonexertional limitations: "[plaintiff] is limited to simple, routine, repetitive mental work tasks; to frequent use of independent judgment; and to

---

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

frequent contact with co-workers, supervisors, and general public. [Plaintiff] is also limited to low stress mental work tasks, that is, on a scale of '1 to 10', '10' being, by example, the work of an air traffic controller and '1' being, by example, the work of a night dishwasher. She is limited [to] work tasks on the stress level of '2 to 3'." [AR at 13, 15.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 16.] At step five, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." Accordingly, the ALJ found plaintiff not disabled. [AR at 16-17.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly: (1) consider the consultative examiner's opinion; (2) determine whether plaintiff's impairments meet or equal the Listing; (3) determine plaintiff's RFC; and (4) pose a complete hypothetical to the vocational expert. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

**A.    THE LISTING**

Plaintiff asserts that the ALJ failed to properly consider whether plaintiff's impairments meet or equal § 12.05C of the Listing. [JS at 6-9.]

To make a proper step-three finding, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)). "The regulations ... require the Secretary to review the symptoms, and make specific findings essential to the conclusion. ... [The ALJ's] findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990)

1  (quotations and citations omitted); see 20 C.F.R. §§ 404.1526(c), 416.926(c) ("When we
2  determine if your impairment medically equals a listing, we consider all evidence in your case
3  record about your impairment(s) and its effects on you that is relevant to this finding."). If a
4  claimant has an impairment or combination of impairments that meet(s) or equal(s) a condition
5  outlined in the Listing, then the claimant is presumed disabled at step three of the evaluation
6  process, and the ALJ need not make any specific findings as to her ability to perform her past
7  relevant work or any other jobs. See 20 C.F.R. §§ 404.1520(d), 416.920(d); Lester, 81 F.3d at
8  828.

9      To meet § 12.05 of the Listing, a claimant must demonstrate that her impairment "satisfies
10 the diagnostic description in the introductory paragraph [of § 12.05] and any one of the four sets
11 of criteria" in paragraphs A, B, C, or D of § 12.05. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §
12 12.00(A). The introductory paragraph to § 12.05 states: "Mental retardation refers to significantly
13 subaverage general intellectual functioning with deficits in adaptive functioning initially manifested
14 during the developmental period; i.e., the evidence demonstrates or supports onset of the
15 impairment before age 22. [¶] The required level of severity for this disorder is met when the
16 requirements in A, B, C, or D are satisfied." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05. To
17 satisfy the requirements of § 12.05C, a claimant must show that she has "[a] valid verbal,
18 performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing
19 an additional and significant work-related limitation of function." Id. When a claimant has different
20 IQ scores for her verbal, performance, or full scale IQ, the lowest score is used to evaluate if the
21 claimant meets or equals § 12.05 of the Listing. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §
22 12.00(D)(6)(c).

23     On October 17, 2006, consultative examining psychologist Dr. Margaret A. Donohue
24 completed a Complete Psychological Evaluation that included, among other things, a mental
25 status examination (revealing that plaintiff "put[] forth an adequate effort"; her mood and affect
26 showed signs of depression and anxiety; she had poor attention, concentration, judgment, and
27 insight; and she had a low general fund of information) and a Wechsler Adult Intelligence Scale -
28 Third Edition ("WAIS - Third Edition") (revealing that plaintiff has a verbal IQ of 66, a performance

IQ of 68, and a full scale IQ of 64). [See AR at 212-16.] Dr. Donohue diagnosed plaintiff as having "[p]olysubstance dependence with marijuana, alcohol, and methamphetamine," noting that plaintiff reported not using for three or four months prior to the Evaluation; "[m]ildly impaired intellectual ability and borderline memory functioning," noting that plaintiff "comes across as being in the low average range of intelligence on clinical presentation"; and hepatitis C, Bell's palsy, and asthma (per plaintiff's report). [AR at 215.] Dr. Donohue opined that plaintiff "is capable of doing simple and detailed tasks but does them slowly," and that "[i]nformation needs to be repeated" to her. [Id.]

In the decision, the ALJ summarized the findings expressed in Dr. Donohue's October 17, 2006, Evaluation, including that plaintiff put forth an adequate effort; showed signs of anxiety and depression; had poor concentration, attention, judgment, and insight; and achieved IQ scores of 64, 66, and 68 respectively on the full scale, verbal, and performance portions of the WAIS - Third Edition. [See AR at 12-14.] The ALJ further noted Dr. Donohue's opinion that plaintiff was capable of doing simple or detailed tasks slowly, but did not mention Dr. Donohue's opinion that plaintiff would need information repeated to her. [Id.] At step three of the sequential evaluation, the ALJ expressly determined that plaintiff's impairments did not meet or equal §§ 12.02 and 12.09 of the Listing. [AR at 12.] The ALJ did not, however, expressly consider whether plaintiff's impairments meet or equal § 12.05 of the Listing (and in particular § 12.05C), and the Court finds that the ALJ's failure to do so warrants remand.

Here, since the ALJ apparently credited Dr. Donohue's findings [see AR at 15 (ALJ rejecting a treating physician's findings in favor of the "consulting/examining physicians")], it appears that plaintiff's IQ scores assessed by Dr. Donohue (all of which are within the range of 60 to 70) satisfy the requirement of § 12.05C that plaintiff have a valid verbal, performance, or full scale IQ score of 60 through 70.

Next, it also appears that plaintiff's other mental and physical impairments of asthma, hepatitis C, depressive disorder, and history of polysubstance dependence, in remission (in addition to her qualifying IQ scores and borderline intellectual functioning) may satisfy the requirement of § 12.05C that plaintiff have other impairments imposing additional and significant

7

work-related limitations.[4] The regulations provide that in determining whether a claimant's impairments satisfy the second prong of § 12.05C, "[the Commissioner] will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in [20 C.F.R.] §§ 404.1520(c) and 416.920(c)." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(A). 20 C.F.R. §§ 404.1520(c) and 416.920(c) define a "severe impairment" as "any impairment **or combination of impairments** which significantly limits [a claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. §§ 404.1520(c), 416.920(c) (emphasis added); see also 42 U.S.C. § 423(d)(2)(B) (requiring the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity"). The Ninth Circuit has held that an impairment or combination of impairments "imposes a significant work-related limitation of function," according to the second prong of § 12.05C, "when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987). Here, the ALJ determined that plaintiff's impairments, when considered in combination, are severe and result in a number of environmental and nonexertional limitations.[5] [See AR at 11-13, 15.] As such, based on the ALJ's own findings, it appears that plaintiff's impairments may satisfy the second prong of § 12.05C of the Listing because she has a severe combination of physical and mental impairments that limit her ability to work in addition to her qualifying IQ scores. See Gomez v. Astrue, 695 F.Supp.2d 1049, 1061-62 (C.D. Cal. 2010) (finding that plaintiff had "a physical or

---

[4] Defendant argues that plaintiff has not shown that she has a physical or other mental impairment imposing additional and significant work-related limitation or function, as required by § 12.05C, because the ALJ determined that plaintiff's depressive disorder, by itself, was not severe. [JS at 10; see AR at 12.] Defendant's argument lacks merit because, as explained herein, the ALJ was required to consider the limiting effects from the combination of plaintiff's impairments, rather than the effects of any one impairment considered in isolation. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(A); 20 C.F.R. §§ 404.1520(c) and 416.920(c); 42 U.S.C. § 423(d)(2)(B).

[5] As discussed below, plaintiff argues that the ALJ erred in excluding additional work-related limitations from the RFC determination.

other mental impairment imposing an additional and significant work-related limitation of function within the meaning of section 12.05," where the ALJ determined that plaintiff had severe physical and mental impairments in addition to his qualifying IQ scores) (internal quotation omitted); see Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) ("[T]he purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.") (quoting Sird v. Chater, 105 F.3d 401, 403 n.6 (8th Cir. 1997)).

Finally, although the Court agrees with defendant's contention that plaintiff has not definitively established the preliminary requirements of § 12.05C (i.e., that plaintiff's "subaverage general intellectual functioning with deficits in adaptive functioning initially manifested ... before age 22" (20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05)) [see JS at 10], the Court observes that other courts have held that a valid qualifying IQ score obtained by a claimant after the age of 22 creates a rebuttable presumption that the claimant's mental impairment began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime. See Jackson v. Astrue, 2008 WL 5210668, at * 6 (C.D. Cal. Dec. 11, 2008); Campbell v. Astrue, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011) (adopting presumption that a valid IQ score of 69 obtained after the age of 22 "is evidence of impairment prior to the age of 22"); see also Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001) ("courts have recognized [the] presumption ... that IQ's remain fairly constant throughout life") (citing Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001); Luckey v. U.S. Dept. of Health & Human Services, 890 F.2d 666, 668 (4th Cir. 1989)). Accordingly, when a claimant presents an IQ score between 60 to 70 and an additional severe mental or physical impairment, there is a rebuttable presumption that the claimant is disabled under § 12.05C of the Listing. See Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) ("Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."). This presumption may be rebutted when an ALJ properly rejects the validity of the claimant's IQ score. See id. The Court finds these cases persuasive and concludes that remand is necessary for the ALJ to expressly determine whether the presumptions that plaintiff's

verbal, performance, and full scale IQ scores have remained constant throughout her life and that she is disabled under § 12.05C of the Listing can be rebutted here.

Since the ALJ did not expressly reference §12.05 of the Listing and, in particular, did not discuss all of the relevant evidence in the context of the requirements of Listing § 12.05C before concluding that plaintiff does not meet or equal a listed impairment -- and it appears that plaintiff might meet at least some of the requirements of § 12.05C -- the Court finds remand necessary for the ALJ to properly consider whether plaintiff should be found disabled at step three of the sequential analysis under this section of the Listing. See Lewis, 236 F.3d at 512; see also Thresher v. Astrue, 283 Fed.Appx. 473, 475 (9th Cir. 2008) (remand warranted for the ALJ to make further step three findings, where "the ALJ's failure to reference § 12.05 and, in particular, Listing 12.05C ma[de] it unclear whether the ALJ came to grips with the specific requirements of that section when she issued her decision") (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3).

**B.    THE ALJ'S RFC DETERMINATION AND VOCATIONAL EXPERT HYPOTHETICAL**

Plaintiff contends that the ALJ erred in reaching the RFC determination and posing a hypothetical question to the vocational expert. [JS at 3-5, 11-16.] Specifically, plaintiff argues that the ALJ erred in excluding from the RFC and the vocational expert's hypothetical question Dr. Donohue's findings that plaintiff has poor insight and judgment, performs tasks slowly, and needs instructions repeated to her, as the ALJ did not properly reject these portions of Dr. Donohue's opinion. [Id.] Although it appears, as explained above, that the ALJ credited the opinion of Dr. Donohue [see AR at 15], plaintiff is correct that the ALJ did not include these portions of Dr. Donohue's findings concerning plaintiff's limitations in either the RFC determination or the hypothetical question that the ALJ posed to the vocational expert in response to which the vocational expert testified that plaintiff could still work and upon which the ALJ relied in finding plaintiff not disabled. [See AR at 13, 15, 17, 49-51.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record,

including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see Social Security Ruling[6] 96-8p, 1996 WL 374184, at *5, *7. Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews 53 F.3d at 1043).

The Court agrees with plaintiff that the ALJ did not adequately address Dr. Donohue's findings in the RFC determination or the vocational expert's hypothetical. Even though the ALJ discussed some of Dr. Donohue's findings in the decision and appeared to credit her opinion over a treating physician's opinion, because the ALJ excluded from the RFC determination and vocational expert's hypothetical some of Dr. Donohue's specific findings (i.e., that plaintiff has poor insight and judgment, performs tasks slowly, and needs instructions repeated to her), it appears that the ALJ implicitly rejected those portions of Dr. Donohue's opinion without providing any

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

reason for doing so. This constitutes error. See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-8p, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding that an ALJ's failure to explain why he disregarded medical evidence prevented "meaningful judicial review"). The ALJ's failure to expressly explain why he apparently rejected Dr. Donohue's findings as discussed above prevents meaningful judicial review. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that ... [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) (internal citation omitted).

Moreover, the Court concludes that the ALJ's exclusion of certain parts of Dr. Donohue's findings from the RFC determination may have impacted the disability determination in this case. Specifically, the ALJ presented a second hypothetical during the hearing that included additional limitations that were similar to (although not precisely the same as) the additional limitations assessed by Dr. Donohue that the ALJ excluded from the first hypothetical and the RFC determination (i.e., the second hypothetical included, among other limitations, the limitations that plaintiff could only occasionally use independent judgment and occasionally needs supervision). The vocational expert testified that plaintiff would be unable to work with the limitations outlined in the second hypothetical. [See AR at 50.] Thus, it is possible that the vocational expert may have found plaintiff unable to work with the additional limitations assessed by Dr. Donohue, but which were excluded from the ALJ's RFC determination. Accordingly, if the ALJ determines on remand that plaintiff does not meet or equal § 12.05C of the Listing (or any other listed impairment), the ALJ is instructed to reconsider Dr. Donohue's opinion in reaching the RFC determination and, if necessary, solicit additional vocational expert testimony.

/
/

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman, 211 F.3d at 1179; Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider if plaintiff's impairments meet or equal § 12.05C of the Listing, to reconsider Dr. Donohue's findings in reaching the RFC determination and, if necessary, to solicit additional vocational expert testimony. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: March 30, 2011

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE